IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARVIS BOWNES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 06-cv-0757-MJR |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

A. Factual and Procedural Background

This civil proceeding challenges the sentence which the undersigned District Judge imposed on Marvis "the Swamp Dog" Bownes in the second of two criminal prosecutions (Case No. 03-cr-30097; referred to herein as "the underlying case").

In the underlying case, Bownes – represented by retained counsel – waived indictment and pled guilty to an information charging him with mail fraud (Count I) and engaging in monetary transactions involving criminally-derived property (i.e., money laundering, Count II), in violation of 18 U.S.C. §§ 1341, 1342 and 1957. Sentencing was scheduled for July 14, 2003, with a separate hearing on Bownes' objections to the pre-sentencing investigation report ("PSR") set July 1, 2003.

On June 9, 2003, Bownes' attorney (William D. Stiehl, Jr.) moved to withdraw, citing serious differences of opinion with his client. The Court granted that motion following a hearing on June 23, 2003. Attorney Charles Stegmeyer, Jr. then entered an appearance on Bownes' behalf. The change of counsel resulted in the Court resetting both the hearing on objections to the PSR and the sentencing hearing (allowing additional time for Bownes and his new counsel to prepare).

Ultimately, in late October 2003, the undersigned Judge sentenced Bownes to 210 months in prison on Count 1 and 120 months in prison on Count 2, the two terms to be served concurrently with each other *and* with the sentence Bownes received in case number 02-cr-30115 (the "first criminal case"). The prison term was to be followed by supervised release – five years on Count 1 and three years on Count 2 (again, to be served concurrently with each other and with the term imposed in the first criminal case), plus a special assessment, a fine and restitution. Judgment was entered, and Bownes appealed to the United States Court of Appeals for the Seventh Circuit.[1]

---

[1] Two more attorneys entered appearances for Bownes the day the appeal was filed (November 6, 2003) – N. Scott Rosenblum and Stephen Welby. They moved to withdraw two weeks later, but the undersigned Judge denied that motion, deferring to the Court of Appeals on whether to relieve Rosenblum and Welby of responsibility for continued representation of Bownes. *See* Docs. 28, 29, 30 and 47 in the first criminal case.

A Restitution Order entered on January 23, 2004 resulted in an Amended Judgment and a second appeal. A Supplemental Restitution Order in February 2004 was followed by a Second Amended Judgment and a third appeal. The Seventh Circuit consolidated – and eventually dismissed – Bownes' appeals. *See* Docs. 48, 78 & 111 in the underlying case (03-cr-30097).

The Court of Appeals' April 2005 written opinion, *United States v. Bownes*, 405 F.3d 634 (7th Cir. 2005), enforced Bownes' waiver of appeal rights, which was part of the plea agreement he had signed. The Court found that the United States ("the Government") had made concessions in exchange for Bownes' waiver – concessions that both defense counsel *and Bownes* "considered adequate to induce him to forego his right to appeal." ***Id.* at 636.** The United States Supreme Court denied a petition for certiorari on October 3, 2005.

A motion under 28 U.S.C. § 2255 must be filed within one year of the date the judgment of conviction becomes final. Finality attaches for § 2255 purposes "when the Supreme Court affirms on the merits of direct review or denies certiorari, or the time for filing a certiorari petition expires." **Robinson v. United States, 415 F.3d 645 (7th Cir. 2005).** Here, Bownes filed his § 2255 motion just before the one-year deadline expired.

The timely-filed motion has been briefed fully. Indeed, the undersigned

3

Judge granted Bownes' counsel additional time to explore "new issues" discovered in June 2007, to serve subpoenas duces tecum on Bownes' prior counsel (Mr. Stiehl), and to obtain documents thereby which might be useful in Bownes' reply brief. By affidavit filed July 17, 2007 (Doc. 17), Bownes' current counsel attested that she obtained Bownes' "entire file" (over 1000 pages of documents) from his prior counsel. Bownes' detailed reply brief followed (accompanied by exhibits), with an additional exhibit filed shortly thereafter, rendering the matter ripe for review in late August 2007. For the reasons stated below, Bownes' § 2255 motion must be denied.

    B.    <u>Analysis</u>

28 U.S.C. § 2255 authorizes a federal prisoner to ask the court which sentenced him to vacate, set aside, or correct his sentence, if "the sentence was imposed in violation of the Constitution or laws of the United States, or ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law." But relief under § 2255 is limited. Unlike a direct appeal, in which a defendant may complain of nearly any error, § 2255 proceedings may be used only to correct errors that vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude. ***See Corcoran v. Sullivan*, 112 F.3d 836, 837 (7th Cir. 1997)(§ 2255 relief is available only to correct "fundamental errors in the criminal process").**

The Seventh Circuit has declared that § 2255 relief "is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004), *citing Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991). *Accord Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996)("relief under 28 U.S.C. § 2255 is reserved for extraordinary situations").

Section 2255 can be used neither as a substitute for a direct appeal nor to re-litigate issues already raised on direct appeal. *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir.), *cert. denied*, 540 U.S. 926 (2003). *Accord Theodorou v. United States,* 887 F.2d 1336 (7th Cir. 1989)(§ 2255 petition "will not be allowed to do service for an appeal.").

Bownes' § 2255 petition advances five claims:

1. His conviction resulted from a guilty plea he made unknowingly, involuntarily and under duress.
2. His conviction was obtained only because the Government used evidence gained from unconstitutional searches and seizures.
3. He was denied the effective assistance of counsel.
4. He was denied his right to appeal.
5. The Government failed to disclose favorable evidence to Bownes.

But for these circumstances, asserts Bownes, he would have opted to "go to trial and mount a defense" (Doc. 8, p.8).

Before delving into the substance of these five arguments, the Court must resolve one threshold question. The plea agreement in this case (Doc. 5 in the underlying case, Case No. 03-30097) plainly provides that Bownes "waives his right to challenge his sentence or the manner in which it was determined on collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255" (*id.*, p. 10, ¶ 32).

Under the law of this Circuit, a § 2255 waiver contained in a plea agreement is fully enforceable "unless the waiver was involuntary or counsel was ineffective in negotiating the [plea] agreement." ***Bridgeman v. United States*, 229 F.3d 589, 591 (7th Cir. 2000)**. In other words, if the plea itself was involuntary, "then the waiver falls because it is part of the whole package." ***Nunez v. United States*, 495 F.3d 544, 546 (7th Cir. 2007), *citing United States v. Wenger*, 58 F.3d 280 (7th Cir. 1995)**.[2]

Similarly in ***Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000), *cert. denied*, 531 U.S. 1175 (2001)**, the Seventh Circuit emphasized:

---

[2] Although counsel have not addressed this, the fact Bownes never moved to *withdraw* his plea in the six months between the April 2003 plea and the October 2003 sentencing (during which time Bownes was out on bond) means that he must show cause and prejudice for his forfeiture. ***See Nunez*, 495 F.3d at 545-46, *citing U.S. v. Frady*, 456 U.S. 152 (1982)**. He has not satisfied this burden.

> [W]aivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives *only with respect to those discrete claims which relate directly to the negotiation of the waiver.*

**Id. at 1069, *quoting Jones v. United States*, 167 F.3d 1142 (7th Cir. 1999)(emphasis in original).**

So this Court must decide whether Bownes' plea (and thus the waiver of the right to collaterally attack his sentence) was involuntarily made *and* whether Bownes' lawyer was ineffective in negotiating the plea agreement.

As explained above, Bownes' waiver of the right to pursue a collateral attack on his sentence was contained in the 17-page written plea agreement he signed in April 2003. The record utterly refutes any contention that Bownes' guilty plea was unknowing, involuntary or the product of duress.

Analysis begins with the fundamental principle that a guilty plea "must be intelligent and voluntary to be valid." **United States v. Bradley, 381 F.3d 641, 645 (7th Cir. 2004), *quoting Brady v. United States*, 397 U.S. 742, 747 n.4 (1970).** Moreover, a plea is not voluntary in the sense of constituting an "intelligent admission" that a defendant committed the charged offense, unless the defendant receives "real notice of the true charge against him," which is the most universally recognized requirement of due process. **Bradley, 381 F.3d at 645, *quoting***

7

*Henderson v. Morgan*, 426 U.S. 637, 645 (1976).

In determining whether a defendant's plea was involuntary, the Court applies a totality of the circumstances test. *United States v. Lundy*, 484 F.3d 480, 484 (7th Cir.), *cert. denied*, – S.Ct. –, 2007 WL 2591122 (2007). Those circumstances include the complexity of the charges, the defendant's age, level of education and intelligence, whether the defendant was represented by counsel, and the nature of the inquiry conducted by the district judge. *United States v. Blalock*, 321 F.3d 686, 688-89 (7th Cir. 2003).

As to the latter factor, compliance with Federal Rule of Criminal Procedure 11 – which requires the trial judge to ascertain that "the defendant understands a panoply of rights before accepting his guilty plea," *Blalock*, 321 F.3d at 688-89 – supports a finding that a guilty plea was made voluntarily and knowingly. Stated another way, a thorough and complete Rule 11 colloquy assures that the defendant has been fully informed of and understands key rights *before* he enters a guilty plea.

In the case at bar, although the charges were somewhat complex, Bownes was an intelligent, savvy, shrewd 49-year old businessman who clearly understood each charge he faced and the penalties accompanying them. He was ably represented by a skilled and seasoned criminal defense attorney.

As to the nature of the inquiry conducted by the district court, the undersigned Judge engaged in a thorough plea colloquy with Bownes. Addressed in detail below, the totality of the circumstances reveals that Bownes' plea was voluntary and knowing. Additionally, the Court concludes that Bownes' counsel rendered effective assistance as to the negotiation and execution of the guilty plea.

The transcript of the April 29, 2003 plea hearing ("Tr.") reveals that Bownes had carefully examined the plea agreement and fully grasped the rights he was giving up by entering a guilty plea. Bownes admitted that his attorney (Mr. Stiehl) had explained the charges and consequences to Bownes, had gone through the charging document (the Information) with Bownes, and had answered any questions Bownes had (Tr., pp. 3-7).

Pointedly queried, Bownes acknowledged that he was "fully satisfied" with the representation and advice provided by Stiehl and that Stiehl had done everything asked of him as to the defense of the case (Tr., pp. 7-8). Bownes confirmed a second time that he had reviewed and discussed the plea agreement with Stiehl and that he signed the agreement after having a full opportunity to "go over this agreement [and] the attachment with [his] attorney, Mr. Stiehl" (Tr., pp. 8-9).

Indeed, at least twice during the plea hearing, the Court granted a recess so that Bownes and Stiehl could further explore questions raised by Bownes

9

(Tr. p. 9, pp. 33-34; *see also* Tr. p. 19).  During the first of those recesses, Bownes alerted his counsel to an error in the plea agreement.  On page 12 of the agreement, the phrase "illegal sale of controlled substance" was used.  This case involved no controlled substances.  After the break, Bownes and his counsel explained the error to the Government, and the Court corrected the provision to read "illegal acts" (Tr., pp. 10-11).

After the undersigned Judge made that correction, Bownes voiced a concern to the Court, leading to an in-depth on-the-record discussion about which vehicles could ultimately be seized by the Government.  Specifically at issue was whether a 1997 Chevrolet van was subject to forfeiture.  Bownes maintained that this particular vehicle should not be forfeited, because it was purchased before January 1, 1997 (Tr., pp. 11-13).  The undersigned Judge explained that a separate hearing would be held on the question of forfeiture, that Bownes' attorney had "preserved" Bownes' objection to forfeiture of the van, and that by going forward with the <u>plea</u>, Bownes was not giving up his right to contest which assets would be forfeited as part of his <u>sentence</u> (Tr. pp. 14-16).  Bownes acknowledged that he understood this and agreed to move forward.

The Court devoted particular attention to the provision of the plea agreement in which Bownes' waived his right to appeal from or collaterally attack the

sentence ultimately imposed (Tr., pp. 22-23).  Bownes indicated that he understood the waiver (Tr., p. 23).   Squarely asked whether he had been pressured, hustled, or forced in any way to execute the plea agreement and plead guilty to the charges, Bownes answered in the negative (Tr., pp. 26-27):

> Q.   Mr. Bownes, has anyone, including your attorney, family, friends or significant others in any way attempted to force you or use pressure or duress to get you to plead guilty to the information in this case?
>
> A.   No, sir.
>
> Q.   Are you pleading guilty here today of your own free will because you are, in fact, guilty of the charges....?
>
> A.   Yes, sir....

After listing the many negative ramifications of the guilty plea (e.g., loss of the right to vote, to hold public office, to serve on a jury, to possess a firearm, etc.), the Court questioned whether Bownes – understanding all these possible consequences of the plea – still wished to go forward and plead guilty (Tr., pp. 27-28).  To which Bownes replied: "Yes, sir, Your Honor" (Tr., p. 28).

The colloquy continued, with the Court discussing the constitutional rights Bownes was giving up by pleading guilty, such as the right to trial, to confront witnesses, to compel witnesses to appear, to contest the legality of any searches and

seizures by the Government, and to seek suppression of any statements (Tr., pp. 28-30).  Bownes said he understood all of that, knew he would not have any trial if the plea went forward, and still wanted to plead guilty (Tr., pp. 30).

The Court then examined the Stipulation of Facts with Bownes.  Bownes acknowledged that he had gone over that document "in detail" with his attorney the previous day, that he had a chance to read it before he signed it, and that he understood it (Tr., p. 32).  When Bownes asked a question about a certain point in the Stipulation, the undersigned Judge stressed that he did not want to "rush" Bownes for "one minute" and, therefore, would take a lengthy break, handle another matter (opening statements in an unrelated trial), let Bownes have plenty of time to talk to his lawyer about any concerns, and resume Bownes' plea at 4:30 pm (Tr., pp. 33-34).

When the plea hearing resumed at 4:35 pm, the Court "started over a little bit," discussed the Stipulation of Facts with Bownes, and then asked (Tr., p. 35): "Do you agree, Mr. Bownes, that the government can prove everything in the Stipulation of Facts against you beyond a reasonable doubt?," to which Bownes answered, without hesitation: "Yes, sir" (*id.*).  After the Government provided a lengthy factual basis, the Court once more explained the ramifications of pleading guilty to the charges, and Bownes pled guilty.  The undersigned Judge accepted the plea, set a date for sentencing, and permitted Bownes to remain on unsecured bond.

Bownes' guilty plea was knowing, intelligent, and voluntary. That conclusion is buttressed by Bownes' attention to detail, comfort in asking questions during the plea hearing, and ability to notice inaccuracies in the plea agreement which the lawyers had overlooked. Fully apprised of the charges against him and the consequences facing him, Bownes *chose* to plead guilty.

The record also shows that Bownes' attorney provided effective assistance in the negotiation and execution of the plea agreement (which contained the waiver of rights to appeal and collaterally attack the sentence). Bownes falls far short of demonstrating that attorney Stiehl's performance was "outside the range of competence demanded of attorneys in criminal cases" and that he "suffered prejudice" thereby. *Barrow v. Uchtman*, 398 F.3d 597, 603-04 (7th Cir.), *cert. denied*, 546 U.S. 866 (2005); *United States v. Scanga*, 225 F.3d 780, 783 (7th Cir. 2000), *cert. denied*, 531 U.S. 1097 (2001); *Strickland v. Washington*, 466 U.S. 668 (1984). *See also United States v. Stark*, – F.3d –, 2007 WL 3010820 (7th Cir. Oct. 17, 2007).

In the context of a guilty plea, a § 2255 petitioner can prove deficient performance by showing that his lawyer did not make a good-faith effort to discover the facts relevant to his sentencing and to analyze those facts in terms of the applicable legal principles. *See United States v. Cieslowski*, 410 F.3d 353, 359

**(7th Cir. 2005),** *cert. denied***, 546 U.S. 1097 (2006).** Bownes has shown neither of these. Plus, even if Bownes had demonstrated deficient performance by counsel (which he has not), he has shown no prejudice resulting from his decision to plead guilty rather than proceed to trial.

> The Seventh Circuit applies a stringent test in this regard:
>
> With respect to prejudice, ... it is not enough to show that the attorney erred, or that the error had "some conceivable effect on the outcome." [*Strickland*] at 693.... Instead, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

***Raygoza v. Hulick*, 474 F.3d 958, 962-63 (7th Cir. 2007). *See also Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)(Two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel," and prejudice prong of that test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.").** Bownes has failed to establish ineffective assistance of counsel relating to his plea and waiver.

  C. <u>Conclusion</u>

Petitioner Bownes has not shown that his plea was involuntary, unknowing or the product of duress. Nor has he shown that his counsel was ineffective.

Therefore, the Court must enforce the § 2255 waiver contained in Bownes' plea agreement. *See Bridgeman*, **229 F.3d at 591**; *Nunez,* **495 F.3d at 546**.[3]

Relief under § 2255 is an extraordinary remedy because it asks the District Court to reopen the criminal process to a person who already has had an opportunity for full process. *Kafo v. United States*, **467 F.3d 1063, 1068 (7th Cir. 2006).** Bownes has not demonstrated that such relief is merited here. For all these reasons, the Court **DENIES** Bownes' § 2255 petition (Doc. 2, with supporting memorandum at Doc. 4 and reply brief at Doc. 19) and **DISMISSES** this case.

IT IS SO ORDERED.

DATED this 26th day of October 2007.

                                               s/ Michael J. Reagan
                                               MICHAEL J. REAGAN
                                               United States District Court

---

[3] No evidentiary hearing is warranted herein. ***See Almonacid v. United States***, **476 F.3d 518, 521 (7th Cir.)**(evidentiary hearing not required on § 2255 petition if motion, files and records conclusively show that petitioner is entitled to no relief), *cert. denied*, **127 S. Ct. 2988 (2007).**